IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JESSICA CRAFT, on behalf of
herself and all others similarly situated — PLAINTIFFS

v. — CIVIL ACTION NO. 1:25-CV-130-SA-DAS

LOUISVILLE HEALTHCARE, LLC;
et al. — DEFENDANTS

ORDER AND MEMORANDUM OPINION

On August 14, 2025, Jessica Craft initiated this civil action by filing her Complaint [1] alleging violations of the Fair Labor Standards Act ("FLSA") against Louisville Healthcare, LLC, Trend Consultants, LLC ("Trend"), and 15 other nursing home facilities (collectively referred to as the "nursing home Defendants").[1] Now before the Court are Trend and the nursing home Defendants' Motions to Dismiss [11, 15]. The Motions [11, 15] have been fully briefed and are ripe for review. Having considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

This civil lawsuit stems from alleged unpaid overtime hours.

Until August of 2024, Craft worked as a certified nursing assistant at a nursing home owned by Louisville Healthcare in Louisville, Mississippi.[2] During this time, Craft alleges that she and other hourly, non-exempt employees frequently worked more than forty hours a week, but the Defendants failed to properly pay overtime. This lawsuit followed.

---

[1] This Court previously dismissed two of the nursing home Defendants, Claiborne County Nursing Center, Inc. and Trend Health & Rehab of Natchez, LLC. *See* [36]. Thus, Craft now maintains claims against 13 nursing facilities.

[2] The Complaint [1] does not allege Craft's start date nor whether she was terminated or resigned.

The current Motions [11, 15] seek dismissal as to Trend and the nursing home Defendants primarily based on lack of jurisdiction.[3] Relevant here, Louisville Healthcare and the nursing home Defendants are distinct legal entities that are related through their relationship with Trend. Trend manages the operations of Louisville Healthcare and all of the nursing home Defendants, including calculating and distributing overtime pay. Charles Bruce Kelly is the Chief Executive Officer of Trend and he, along with various family members, owns at least some portion of all the Defendants.

After the Motions [11, 15] were filed, Craft filed a Motion for Limited Jurisdictional Discovery [41] seeking discovery related to the employment relationship between Craft and the Defendants. The Court granted the Motion [41] in part and allowed Craft fourteen days within which to propound discovery to Louisville Healthcare, as well as five other defendants of her choice. *See* [58].

Following this limited discovery period, the Court ordered supplemental briefing on the pending Motions [11, 15]. Supplemental briefing is now complete. *See* [72, 74, 83, 84].

*Rule 12(b)(1) Dismissal Standard*

Before addressing the merits, the Court must address the relevant standard. The Defendants move to dismiss under Rule 12(b)(1) and 12(b)(6).[4] The Court will first proceed under Rule 12(b)(1) because jurisdiction is a threshold issue. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir.

---

[3] To be clear, any reference to the nursing home Defendants does not include Louisville Healthcare but is instead limited to the other 13 remaining nursing home Defendants. Louisville Healthcare is a distinct legal entity that has not moved for dismissal at this time.

[4] In her Supplemental Response [74], Craft argues that Court should not consider the Motions [11, 15] under a Rule 12(b)(1) standard but should instead apply a Rule 12(b)(6) or Rule 56 standard because the factual question underlying the jurisdictional issue question is also the central question on the merits. [74] at p. 3. The Court disagrees. The central question on the merits is whether the Defendants denied employees overtime pay in violation of the FLSA. As the Court will discuss *infra*, whether the Defendants had an employer-employee relationship with Craft is the threshold jurisdictional issue.

2001) (holding that "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the courts should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits"). Additionally, in a collective action like this one, standing issues must be resolved before a class is certified. *Lucas v. BMS Enterps., Inc.*, 2010 WL 2671305, at *2 (N.D. Tex. July 1, 2010) (citing *Rivera v. Wyeth-Ayerst Lab'ys.*, 283 F.3d 315, 319 (5th Cir. 2002)).

A Rule 12(b)(1) motion allows a party to challenge the court's subject matter jurisdiction. "[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F. 2d 507, 511 (5th Cir. 1980)) (citations omitted). In ruling on a Rule 12(b)(1) motion to dismiss, the court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotation marks and citation omitted). The court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The district court should grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane v. Haliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

*Analysis and Discussion*

The crux of Craft's Complaint [1] is simple—Trend, the entity that processes payroll and calculates overtime for Louisville Healthcare and all of the nursing home Defendants, improperly

calculated overtime pay in violation of the FLSA. In seeking dismissal, Trend and the nursing home Defendants' sole argument is that Craft is employed exclusively by Louisville Healthcare.

As previously mentioned, Trend and the nursing home Defendants argue that subject matter jurisdiction is not proper as to them because they did not employ Craft. Craft makes three arguments in rebuttal. First, she argues that all of the Defendants are collectively her single employer. In the alternative, she argues that Trend is her employer under the economic reality test. Lastly, she argues that additional discovery will cure any jurisdictional deficiencies. The Court will address each in turn.

*I. FLSA collective action*

Before turning to the merits of the arguments, the Court finds it necessary to explain the statutory framework of an FLSA claim.

*a. Statutory Framework*

Under the FLSA, there are two distinct components—FLSA coverage and FLSA liability. Each component is required to maintain an FLSA claim, but, critically, each component is subject to a different analysis.

To start, "[t]he FLSA guarantees overtime pay to employees engaged in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)) (internal citations omitted). Either individual or enterprise coverage is sufficient to invoke FLSA protection. *Id.* In addition, the FLSA requires that the enterprise surpass an "annual gross volume of sales . . . [of] not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A)(ii).

Importantly, in the FLSA context, the enterprise theory "only applies to the question of whether a named defendant is sufficiently large [in terms of annual gross sales] to be governed by the [FLSA]." *Hodges v. Admin. Sys., Inc.*, 2026 WL 1485716, at *5 (N.D. Miss. May 27, 2026) (citing *Biziko v. Van Horne*, 2019 WL 3928575, at *13 (N.D. Tex. Aug. 20, 2019)) (additional citation omitted). Simply put, showing that two or more entities constitute an enterprise is relevant to determine whether the annual dollar volume test is met, but irrelevant as to FLSA liability. *Id.* In this case, FLSA coverage is not contested so any application of enterprise theory is irrelevant.

Unlike FLSA coverage, FLSA liability is predicated *exclusively* on an employer-employee relationship, irrespective of a defendant's involvement in a common enterprise. *Id.* (citing *Lucas*, 2010 WL 2671305 at *3 n.8). The FLSA's definition of employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). The Fifth Circuit applies the economic reality test to determine if an entity is an employer under the FLSA's definition. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).[5] Importantly, "two or more employers may stand in relation to an employee at the same time." *Id.* at *3 (citing 29 C.F.R. § 791.2). However, "[i]n cases where a plaintiff alleges to be employed by more than one employer, the court must apply the economic reality test *to each individual or entity alleged to be an employer*." *Id.* (citing *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir.1990)) (emphasis added). That means, in cases where more than one entity is alleged to be an employer, what controls is whether the purported joint employer—based on the economic reality test—is in an employer-employee relationship with the plaintiff. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Joaquin*, 2016 WL 3906820, at *2-3.[6]

[5] The Court will address the economic reality test and its application to the relevant defendants *infra*.

[6] In addition, the FLSA also permits an employee to maintain an action against her employer not only on her behalf but on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Regardless, in a

With that explanation, the Court now returns to the issue of standing.

*b. FLSA Liability*

Craft brings a FLSA collective action alleging failure to pay overtime against the remaining 15 Defendants in this action.[7] In her Complaint [1], Craft alleges the Defendants are her "joint employers" because "[d]espite their technical separateness . . . they are ultimately one large company that is owned, managed and controlled by the Kelly family." [1] at p. 15. As previously explained, when a plaintiff pleads multiple or "joint" employers, they must allege standing as to *each* named defendant. *Hodges*, 2026 WL 1485716 at *4 (quoting *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008)). In an attempt to circumvent this requirement, Craft applies "enterprise concepts" and argues that all 15 Defendants are *de facto* her single employer and standing should be assessed as to all 15 Defendants together at once. This argument is a non-starter. Craft improperly conflates enterprise concepts (which applies exclusively to FLSA *coverage*) with a joint employer theory (which applies exclusively to FLSA *liability*). Notwithstanding this flawed logic, the Court will walk through her argument.

In making her argument, Craft relies on the FLSA's definition of "person" which, in part, includes the phrase "organized group of persons." [74] at p. 5 (citing 29 U.S.C. § 203(a)). Without citing any authority in support, she claims the Defendant entities constitute an "organized group of persons" that are one "person" or one employer under the FLSA. In fact, she concedes that no court has analyzed the "organized group of persons" language. *Id.* at 6. Then, employing her

---

collective action like this one, standing issues must be resolved before a class is certified. *Lucas*, 2010 WL 2671305 at *2 (citing *Rivera*, 283 F.3d at 319 (5th Cir. 2002)).

[7] To reiterate, two of the nursing home Defendants have been terminated from this case. In addition, the Court notes that bringing her claim as a collective action does not absolve Craft of her jurisdictional pleading requirements. *See Hodges*, 2026 WL 1485716 at *4-5.

proposed statutory interpretation, Craft concludes that all Defendants are a "single employer" or "single enterprise" to which standing should be assessed at once.[8]

This Court thoroughly addressed this argument in a recent case. *Hodges*, 2026 WL 1485716.[9] In *Hodges*, Lucunya Hodges, a certified nursing assistant, alleged that Care Givers, LLC, the nursing home where she worked, failed to pay her overtime wages. *Hodges*, 2026 WL 1485716 at *1. Hodges brought FLSA claims against 45 defendants, each being a separate legal entity, including 43 individual nursing homes and two other legal entities that provided payroll and retirement services for each of those nursing homes. *Id*. All of the defendants, besides Care Givers LLC, moved to dismiss arguing that they did not employ Hodges as required by the FLSA. *Id*.

As in this case, Hodges argued that the defendant entities were an "organized group of persons" subject to "single employer" or "single enterprise" liability. *Id.* at *3. She also argued, under her theory of liability, that she did not need to establish standing as to each individual defendant. *Id.*

This Court rejects that argument and explained that "FLSA *liability* is predicated only on an employee-employer relationship, not on defendants' involvement in a common enterprise." *Id.* at *6 (emphasis added; citations omitted). Simply put, this Court held that "evidence of a single enterprise or organized group [is] simply not relevant to the standing question." *Id.* at *7. "Rather, what matters is whether [plaintiff] has alleged an injury traceable to *each* defendant[.]" *Id.* (emphasis added). Applying this holding, this Court then analyzed each defendant under the

---

[8] It appears to this Court that this "single employer" liability theory is a new, separate theory than the joint employer liability alleged in the Complaint [1].

[9] Notably, Craft is represented by the same attorney as the plaintiff in *Hodges* and the arguments briefed in each case are nearly identical. Notwithstanding this reality, this Court independently considered the arguments raised herein.

economic reality test and ultimately dismissed all defendants with the exception of Care Givers, LLC.

Here, like in *Hodges*, the only issue is FLSA *liability*, to which the single enterprise or single employer theory is inapplicable.[10] Relying on *Hodges* and clearly established FLSA principles, the Court rejects Craft's argument and will consider whether dismissal is proper as to each Defendant under the economic reality test.[11] The Court now turns to that analysis.

*II. Economic Reality Test*

As previously mentioned, the Fifth Circuit employs a four-factor 'economic reality' test to determine whether a party is an employer under the FLSA. *Gray*, 673 F.3d at 354-355. Under the economic reality test, courts evaluate "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (citation and internal quotation marks omitted). No single factor is dispositive and, instead, courts are to consider the totality of the circumstances. *Id.* "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Orozco*, 757 F.3d at 448 (citing *Martin v. Spring Break '83 Prods., LLC,* 688 F.3d 247, 251 (5th Cir. 2012)).

Importantly, Craft's sole argument is that Trend meets the economic reality test. She fails to raise any argument that the nursing home Defendants were her employer under the economic

[10] Craft also makes some argument that the Fifth Circuit allows the single employer doctrine for claims under the Age Discrimination in Employment Act ("ADEA"), which shares identical statutory language to the FLSA. While that may be true, Craft fails to cite *any* legal authority, nor has the Court identified any such authority, to support the single employer doctrine in the FLSA context.

[11] To the extent that Craft made any additional arguments or presented evidence on the standing issue that went unaddressed, the Court has considered them in reaching this conclusion. They would not have changed the outcome.

reality test. To reiterate, the burden is on the plaintiff to prove jurisdiction exists. *Wheeler*, 2018 WL 6204444 at *2 (citing *Tsolmon*, 841 F.3d at 382). As such, Craft's failure to establish jurisdiction mandates dismissal of the nursing home Defendants.

The Court will therefore only consider the relevant factors in connection with Craft's allegations as to Trend.

As to the first factor, Craft does not allege that Trend possessed authority to hire or fire her. Instead, Craft points to the Management Services Agreement ("MSA") between Trend and Louisville Healthcare, which contained a "staffing provision [that] established structural authority over workforce composition." [74] at p. 22. As evidence of control, she cites examples of administrators managing or rotating between multiple Trend-affiliated facilities. Craft then concludes "[t]his pattern of centralized personnel deployment of facility-level administrators – the people who exercise the day-to-day power to hire and fire – is inconsistent with independent facilities making independent hiring decisions." *Id.* This argument misses the mark.

The crux of this prong is whether Trend "had the authority *individually* to control employment terms of lower-level employees." *Gray*, 673 F.3d at 355 (emphasis added). In short, the Court finds that Craft's broad allegations concerning staffing in a general sense are insufficient to meet her burden as they are conclusory and irrelevant to the present inquiry. *See Hodges*, 2026 WL 1485716 at *8 (quoting *Gray*, 673 F.3d at 355) ("[M]ere conclusory allegations and inference are not sufficient to prove the required linkage between an employee and purported employer.") (internal citations omitted). She has simply provided no allegation that Trend individually maintained authority to control the terms of her employment.

Lastly on this point, Craft shows that Trend advertised job listings for CNAs at multiple facilities. Again, she does not allege that Trend posted a job listing for Louisville Healthcare or

that Trend made the actual hiring decisions as to her or any other specific employee at that facility. Again, she misses the mark as to the relevant inquiry. As such, this factor does not weigh in favor of an employer relationship with Trend.

As to the second factor, supervision and control of conditions of employment, Craft again points to the MSA that described the management services provided by Trend which included staffing requirements, training programs, and furnishing employee handbooks. Craft then cites examples of similar employee policies and procedures across Trend-affiliated facilities—none of which included Louisville Healthcare. For the same reasons as the first factor, this argument is flawed.

Evidence that Trend "played some role in developing polices that applied to [Craft]" does not show that Trend "played any role in applying and enforcing polices against *her*." *Hodges*, 2026 WL 1485716 at *9 (citing *Ivery v. RMHI Franchise Corp.*, 280 F. Supp. 3d 1121, 1130 (N.D. Ill. Dec. 8, 2017)) (emphasis added). The broad allegation that Trend provided training and compliance services to Louisville Healthcare does not show that Trend supervised Craft, controlled her work schedules, or the conditions of her employment. *See Orozco*, 57 F.3d at 450 (concluding that third-party company providing training or scheduling review did "nothing to suggest . . . supervis[ion] or control").

The Court will address the last two factors together. *See Hodges*, 2026 WL 1485716 at *9. It is uncontested that Trend maintained records of Louisville Healthcare employees in order to process payroll and calculate overtime. This Court recently explained that providing human resource services like payroll does not make an entity, like Trend, a joint employer or show it exercised control over an individual's employment. *Id.* (collecting cases). In an attempt to distinguish the plethora of case law on this issue, Craft points to the MSA which provides that

Louisville Healthcare pays Trend a management fee calculated by a percentage of gross revenue. Craft contends that this fee structure "aligns Trend's interests with the facility's financial performance." [74] at p. 18. While this may be true, it is yet again irrelevant to the ultimate query—whether Trend had "operating control" over Craft while she worked at Louisville Healthcare. *Orozco*, 757 F.3d at 448 (citing *Martin v. Spring Break '83 Prods., LLC,* 688 F.3d at 251.

Considering the totality of the circumstances, there is no evidence that Trend is Craft's employer under the FLSA. Simply put, Craft may not bring a claim against Trend simply because it is in a business relationship with her actual employer, Louisville Healthcare. *See Hodges*, 2026 WL 1485716 at *9 (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2nd Cir. 2003)) ("'limiting FLSA liability to case in which defendants, based on the totality of the circumstances, function as employers of the plaintiff rather than mere business partners of plaintiff's direct employer,' ensures that he FLSA 'is not interpreted to subsume typical outsourcing relationships.'"). In line with this finding, Trend is dismissed for lack of jurisdiction.[12]

*III. Request for limited discovery and leave to amend*

In the alternative, Craft seeks additional limited discovery and leave to amend her Complaint [1]. As a preliminary matter, Craft's request for leave failed to comply with the Local Rules, which require that a plaintiff seeking leave to amend do so in a separate filing and "a proposed amended pleading must be an exhibit to a motion for leave to file the pleading[.]". L. U. CIV. R. 7(b)(2). First, a plaintiff must seek leave to amend in a separate filing and "a proposed amended pleading must be an exhibit to a motion for leave to file the pleading[.]" *Id.* Craft may

[12] In addition to the arguments discussed, Craft presented several arguments and pieces of evidence not mentioned in the Court's analysis. In reaching its decision, the Court considered those arguments and evidence and found them unpersuasive to the ultimate outcome.

not embed a motion to amend in her response to a dispositive motion as a last-ditch effort to prevent dismissal in violation of the Court's rules.

Further, Craft appears to concede that the record does not support jurisdiction and speculates that *additional* jurisdictional discovery will provide a basis for amendment. In a previous Order [58], this Court permitted Craft limited jurisdictional discovery from Louisville Healthcare and five other Defendants of her choosing and ordered that "discovery beyond this initial sampling will only proceed if this initial sample evinces some reasonable basis supporting Plaintiff's claims of jurisdiction." [58] at p. 2. As the Court explained thoroughly above, Craft provided no evidence that Trend or the nursing home Defendants employed her. As such, the Court finds Craft failed to submit evidence to support a grant of additional discovery.

*Conclusion*

For the reasons set forth above, the Defendants' Motions to Dismiss [11, 15] are hereby GRANTED. Trend Consultants, LLC; Durant Healthcare, LLC; Clinton Healthcare, LLC; Hinds County Nursing & Rehabilitation Center, LLC; Meadowbrook Health & Rehab, LLC; Poplar Spring Nursing Home Center, LLC; Wilkinson County Senior Care, LLC; North Street Healthcare, LLC; Belhaven Senior Care, LLC; Carthage Senior Care, LLC; Trend Health & Rehab of Meridian, LLC; Trend Health & Rehab of Brookhaven, LLC; Trend Health & Rehab of Carthage, LLC; Trend Health & Rehab of Houston, LLC are hereby DISMISSED as parties to this litigation. The Clerk of Court is hereby directed to terminate them as active defendants on the docket.

The previously-imposed stay of this case is hereby LIFTED. The Magistrate Judge will hold a conference with the parties in due course.

SO ORDERED, this the 9th day of September, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE